UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11-MC-23107-GOLD/GOODMAN

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**ORDER ON MOTION TO DISCLOSE CONFIDENTIAL INFORMANT**

THIS CAUSE is before the Undersigned upon [ECF No. 37] the District Court's order of reference of [ECF No. 36] the Miccosukee Tribe's Motion for Disclosure and Production of Government's Confidential Informant(s). The Court has reviewed the motion and [ECF 40] the Government's Response. In addition, the Court held [ECF No. 45] a lengthy hearing on May 1, 2012 and reviewed [ECF Nos. 46-48] post-hearing submissions by the Tribe and the Government.

For the reasons outlined below, the Court **denies** the Tribe's motion to compel the Government to disclose all reports and information about the confidential informant and its associated, alternate request for the Court to conduct an *in camera* review of the reports.

    I.    **Introduction and Background**

This case concerns the Tribe's challenge to summonses issued as part of the Government's investigation into whether the Tribe is liable for failing to

1

withhold from and report distributions to its members for the 2010 tax year. The District Court previously rejected the Tribe's petitions to quash similar summonses issued in connection with an investigation into the 2006 through 2009 tax years. Specifically, in *Miccosukee Tribe of Indians v. United* States, No. 10–23507–CV, 2011 WL 3300164 (S.D. Fla. Aug. 2, 2011), the Honorable Alan S. Gold granted the Government's motion to deny petitions to quash. In that prior case, the Tribe made, among other arguments, the same one it raises here and which forms the basis of its effort to obtain discovery about the confidential informant: that the Internal Revenue Service did not have a proper purpose to investigate the Tribe for tax violations. Judge Gold found that this argument was "not persuasive." *Id.* at *17.

In the current case, the District Court imposed [ECF 17] a December 16, 2011 deadline for motions seeking discovery and, if discovery were permitted, a February 3, 2012 discovery completion deadline. Based on this ruling, the Tribe filed [ECF 19] a motion for discovery and an evidentiary hearing. The Tribe did not mention any need to obtain discovery regarding the confidential informant in that motion.

The District Court referred the discovery motion to me [ECF 20] and, after a hearing, I entered an order [ECF 28] permitting the Tribe to take a limited-purpose, one-hour telephone deposition of the Internal Revenue Service officer who obtained the summonses. The order limited the deposition to three specific issues the Tribe pinpointed in its motion for discovery: (1) the breadth of the summonses, (2) the basis for Agent Furnas' conclusion that the designated

statutes apply to the Tribe "and thus provide the IRS with an alleged purpose to issue the summonses challenged in this case," and (3) the reasons for Agent Furnas' imposition of steep penalties to members.

During Agent Furnas' telephone deposition, the Tribe asked him a few questions about the information provided by the informant and its connection to the summonses issued for the investigations. Agent Furnas provided the following information in response:

   a. The information from the informant was the reason he decided initially to do an audit. [ECF 31-1, p. 23].
   b. He did not advise the Tribe's counsel at the time that the information received from the informant was the basis for the audit. [ECF 31-1, p. 23].
   c. While the initial investigation into tax years 2000 through 2005 was prompted by the informant's information, the IRS expanded its examination to the current years based upon the results from the earlier years' investigations. [ECF 31-1, pp. 32 -33]
   d. The new summonses for tax year 2010 were based on the information developed during the examination, not because of any new information received from a confidential source. [ECF 31-1, p. 33].
   e. Government counsel instructed Agent Furnas not to testify whether a confidential source is still providing information regarding the Tribe to the Internal Revenue Service. [ECF 31-1, p. 33-34].

After the telephone deposition, the District Court held an evidentiary hearing and ordered the parties to submit proposed findings of fact and conclusions of law. [ECF 34]. The Tribe submitted its proposed findings [ECF 35] and then, approximately two weeks later, filed the instant motion concerning the confidential informant.

## II. The Parties' Positions

At bottom, the Tribe contends that Agent Furnas conceded that some of the information received from the confidential informant was not entirely accurate and that it needs to learn the informant's identity to assist it in supporting its position that the IRS has an improper purpose for conducting an investigation into the 2010 tax year.

The Government contends that the motion should be denied because the Tribe never mentioned a need to obtain information about the informant in its original motion for discovery filed in December of 2011. Moreover, the Government brands the motion as untimely because discovery motions were due by February 3, 2012 and the Tribe filed it on March 23, 2012 -- after the evidentiary hearing and after the Government submitted its brief. The Government also challenges the motion on the merits, arguing that the Tribe has no legal right to obtain the informant's identity in a summons enforcement proceeding and that Judge Gold has already ruled as much.

At the May 1, 2012 hearing before the Undersigned, the Tribe's counsel addressed the Government's timeliness argument. The Tribe's counsel explained that he first learned the informant was not completely credible at the

February 24, 2012 evidentiary hearing before Judge Gold. Specifically, the Tribe's counsel contended Agent Furnas testified that the informant's allegation that the tribe used armored Brinks-type trucks to distribute cash directly to tribal members was not true. The Tribe argued that it acted relatively promptly after learning this information by filings its motion to disclose the informant's identity approximately one month later.

Following the May 1, 2012 hearing, however, the Tribe submitted a notice clarifying its position [ECF 46]. In particular, the Tribe candidly acknowledged that it mistakenly alleged that Agent Furnas admitted at the February 24, 2012 evidentiary hearing that some of the informant's information was inaccurate. The Tribe now says, "Agent Furnas did in fact make a statement in which he admitted that the allegations made by the Confidential Informant were not accurate" — but that it happened at the agent's January 12, 2011 deposition, **more than a year earlier**.

The notice [ECF 46] does not explain why this mistake was made or why the Tribe waited more than a year after first learning about what it describes as Agent Furnas' admission (that some of the informant's information was "not accurate") to file the instant motion. This omission is significant given that the motion is purportedly premised on this very point.

For its part, the Government contended during the May 1, 2012 hearing that any inaccuracies in the informant's information amount to, at best, a minor discrepancy. The Government explained that its investigation confirmed that cash was, in fact, distributed to Tribe members, but that the cash may not have

been ultimately distributed to members by armored trucks. Instead, the Government explained, the money was transferred from the armored trucks to SUVs, which, in turn, drove around with a tribal police escort and cashed checks written from the Tribe to individual Tribe members. The Government also argued that Judge Gold already concluded that the specifics surrounding the particular method of cash delivery to Tribe members were insufficient to support the conclusion that the Government lacked a permissible purpose to issue the summonses as part of its investigation into the 2010 tax year.

In that earlier case involving summons for the years 2000 to 2005, *Miccosukee Tribe of Indians v. United States*, 10–23507–CV, 2011 WL 3300164 (S.D. Fla. Aug. 2, 2011), Judge Gold made the following findings:

    a. "Regarding the armored car allegations, Agent Furnas determined that the Tribe distributed cash to tribal members, the armored car went to the reservation as far as the casino and Agent Furnas eventually learned that from there it was taken in SUVs with armed police escorts to the reservation and distributed to tribal members." *Id.* at *16, ¶ 73.

    b. "According to Agent Furnas, the Tribe transported large amounts of currency to the reservation, wherein tribal members would line up, receive checks, cash their checks on the spot and walk away with cash." *Id.* at 17, ¶ 79.

    c. "As a result of Agent Furnas' examination of the prior years, he found that allegations that the Tribe used armored vehicles to deliver up to

  $10 million in cash from its gambling operations to hundreds of Tribe members four times a year were **materially true.**" *Id.* at *18, ¶ 93.

d. "Though the focus of the IRS investigation is not whether cash arrived in armored vehicles or some other method, Agent Furnas confirmed that the examination that arose from these allegations is continuing." *Id.* at *18, ¶ 94.

e. "Insofar as there were allegations regarding the armored cars, Agent Furnas reiterated that the particular statement regarding the allegations was true." *Id.* at 19-20, ¶ 103.

III. **Analysis**

  Given that the stated ground for the motion is a development which the Tribe learned about in January 2011 and that Judge Gold previously ordered that discovery must be completed by February 3, 2012, the Tribe's March 23, 2012 motion is untimely and *could* be denied on that ground alone. However, the Court prefers to rule on the merits and, recognizing the long and relatively complicated procedural history in this case and the related, prior litigation, the Court will exercise its discretion and not deny the motion as untimely. Instead, the Court will address the merits.

  The Tribe's stated reason for seeking the informant's identity is not persuasive. The Tribe argues that some of the informant's information was not completely accurate and that this misinformation might demonstrate that the Government lacks a permissible purpose to issue the summonses.

First, the Court is not at all convinced that the informant's misinformation would somehow demonstrate the Government lacked a permissible purpose to conduct its investigation and issue the summonses. To be sure, the argument might make sense if the Government relied exclusively on the informant's information to justify issuing the summonses and knew before doing so that the information was incorrect. But that is not the situation here. The agent did not learn of the inaccuracy (modest as it might be) until after the investigation began and after he confirmed the gist of the information. Moreover, the informant's information is not the catalyst for *this* investigation into the *2010* tax year. Rather, it is the results of the prior investigation into earlier tax years -- results which confirmed the main theme of the informant's allegations -- that prompted the expansion of the investigation and the new summonses currently being challenged.

Second, the inaccuracy in the informant's information is, at best, minor and does not alter the primary allegation that cash-filled vehicles were used to distribute cash to Tribe members on the reservation.

Third, it appears as though Judge Gold has **twice** issued rulings which reject or undermine the Tribe's argument. Specifically, during the evidentiary hearing in the earlier case, Judge Gold sustained the Government's objection to a question to Agent Furnas from Tribe counsel, asking him to identify the informant. In sustaining the objection, Judge Gold observed the fundamental distinction between the need to discover an informant's identity to adequately defend a criminal prosecution as opposed to the need in a civil summons

enforcement scenario, where "a summons to investigate can be merely on suspicion that the law is being violated or even just because the IRS wants to assure that it is not being violated." [ECF 40, pg. 4 (quoting Feb. 17, 2011 evidentiary hearing transcript)]. And, concerning the second prior ruling, Judge Gold found that the informant's information was "materially true." In other words, Judge Gold has already rejected the argument that the allegations were significantly false or incorrect.

The Tribe cites *Roviaro v. United States*, 353 U.S. 53 (1957) to support its motion to compel the Government to disclose the informant's identity. But *Roviaro* arose in the context of a criminal prosecution and several of its core underpinnings do not directly fit a situation where a party is merely attempting to quash subpoenas in a civil investigation where no liability or penalty has yet to be imposed. For example, unlike in *Roviaro*, there is no concern here over whether disclosure of the informant's identity might be helpful to the defense of a criminally accused or is essential to a fair determination of a lawsuit. *Id.* at 60-61. Similarly, the *Roviaro* Court explained that the decision whether to order disclosure must strike the "proper balance" and "depend[s] on the particular circumstances of each case," including the "**crime charged**, the possible **defenses** . . . and other relevant factors." *Id.* at 62. This analysis seems facially inapplicable to a civil summons issued as part of an ongoing investigation where the Government has neither leveled any charges or penalties nor reached any conclusions regarding tax law compliance.

Recognizing that this is not a criminal case, the Tribe cited one case in the civil context: *Suarez v. United States*, 582 F.2d 1007 (5th Cir. 1978). *Suarez* involved two taxpayers who filed a civil action demanding refund of the wagering occupational tax and a portion of the wagering excise tax assessed against them for accepting lottery wagers. The district court in *Suarez* denied a motion to compel discovery of the confidential informant's identity or, alternatively, to conduct an *in camera* proceeding. On appeal, the taxpayers argued that disclosure was essential to a fair determination of their tax liability. But this case is not helpful to the Tribe, because the Eleventh Circuit affirmed the district court and held that neither disclosure nor an *in camera* proceeding is required under *Roviaro* and its progeny where the informant is akin to a tipster who simply observed and reported the actions of others.

Nevertheless, the Tribe attempts to distinguish *Suarez* by arguing [ECF No. 36, p. 9] that "unlike the diligent police work in *Suarez*, the IRS investigation in the case at bar was entirely based on one false, unsupported allegation." In fact, this one brief sentence is incorrect in three separate ways:

First, the principal allegation in this case was not false. Instead, only one detail was incorrect. That does not make the entire allegation false, which is what the Tribe seems to be arguing. Second, the allegation is not unsupported. Rather, as Agent Furnas testified, his investigation corroborated the primary allegation and confirmed that the allegation was materially correct. And third, the investigation in **this** case for the 2010 tax year was based on information developed by Agent Furnas through his investigations of other years. The

incorrect information prompted the *past* investigations and is therefore, at best, only an *indirect* cause of the 2010 tax year summonses.

In addition, the Government called the Court's attention to another federal appellate case involving a strikingly similar scenario that supports the Government's argument against disclosure. In *Pickel v. United States*, 746 F.2d. 176, 181-82 (3d Cir. 1984), husband and wife taxpayers filed a motion to quash two summonses issued by the IRS in a tax fraud investigation and, as part of that motion, demanded to learn the identity of a government informant. The district court in that case quashed the summonses because the government refused to reveal the informant's identity. The Third Circuit reversed because it disagreed that the government's refusal to identify the informant justified the order.

The appellate court began its discussion by noting that the government has the right to withhold the identity of a witness in non-criminal proceedings, as well as in criminal investigations and prosecutions. The court then pointed out that "while it is by no means clear that the respondent in an administrative summons proceeding has the same right as a defendant in a criminal case to override the privilege so as to insure his right to a fair trial, we so assume for purposes of this case." *Id.* at 181, n.4.[1] It then underscored the applicable framework for analyzing the challenge: (1) the individual seeking disclosure has the burden of establishing the significance of the informant's information, and (2) mere speculation as to the usefulness of the informant's testimony is insufficient to justify disclosure of the informant's identity. It also noted that the taxpayers

---

[1] The Undersigned is using that same assumption here.

11

could seek to suppress any improperly acquired evidence in a criminal proceeding if they demonstrate that the IRS improperly used its summons power.

A review of the Tribe's motion under the *Pickel* framework indicates that the Tribe is not entitled to relief. Given the minor inaccuracy at issue, the Tribe has failed to carry its burden of demonstrating the significance of any additional information the Tribe may gain after learning the informant's identity. The Tribe is essentially speculating that learning the informant's identity will lead to significant information concerning its claim that the government lacks a legitimate purpose for its 2010 tax year investigation. This is insufficient to overcome the privilege.

## IV.   CONCLUSION

The Tribe has not met its burden to show that disclosure of the informant's identity is required or that the Court should conduct an *in camera* examination of the memorandum summarizing the informant's information.

The motion is therefore **denied**.

**DONE and ORDERED**, in Chambers, in Miami, Florida, this 11th day of May, 2012.

JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Alan S. Gold
All counsel of record