**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 11-CV-23107-GOLD/GOODMAN [LEAD CASE]**

**MICCOSUKEE TRIBE OF INDIANS**
**OF FLORIDA,**

       Petitioner,

v.

**UNITED STATES OF AMERICA,**

       Respondent.

_____/

### ORDER GRANTING UNITED STATES' MOTION TO DENY PETITION TO QUASH [ECF No. 10]; FINDINGS OF FACT AND CONCLUSIONS OF LAW; CLOSING CASE

       This Cause is before the Court upon Respondent United States of America's ("Respondent" or "Government") Motion to Deny Petitions to Quash [ECF No. 10].[1] Petitioner Miccosukee Tribe of Indians of Florida ("Petitioner" or "Tribe") filed a Response in opposition [ECF No. 13], and the Government filed a Reply [ECF No. 15]. On February 24, 2012, I held an evidentiary hearing [ECF No. 33]. The parties submitted their respective Proposed Findings of Fact and Conclusions of Law after the evidentiary hearing [ECF Nos. 35, 38, 42]. Having considered the parties' written submissions, witness testimony, and the applicable law, and being otherwise duly advised, I make the following findings of fact and conclusions of law and grant the Motion to Deny Petitions to Quash.

---

[1] Unless otherwise indicated, all references to the docket are to Case No. 11-cv-23107. This case was improperly designated as a miscellaneous case (Case No. 11-mc-23107) and has been converted to a civil case.

## I.      Procedural Background and Parties' Positions

On August 29, 2011, the Tribe filed a Petition to Quash Summons to Morgan Stanley Smith Barney [ECF No. 1] in Case No. 11-cv-23107, seeking to quash a summons issued to Morgan Stanley Smith Barney ("Morgan Stanley") on August 9, 2011 for select documents encompassing calendar year 2010.  That same day, the Tribe filed Petitions to Quash summonses (together with Morgan Stanley summons, "Summonses") issued to Citibank (South Dakota), N.A. ("Citibank") (Case No. 11-cv-23111), American Express Company ("American Express") (Case No. 11-cv-23129), and Wachovia Bank ("Wachovia") (Case No. 11-cv-23112) (together with Case No. 11-cv-23107, "2011 Cases").    At the Government's request, the 2011 Cases were transferred to me on the grounds that two prior cases—*Miccosukee Tribe of Indians of Florida v. United States*, Case No. 10-cv-23507-GOLD and *Miccosukee Tribe of Indians of Florida v. United States*, Case No. 10-cv-21332-GOLD)—are related to the 2011 Cases.  [ECF No. 9].  I consolidated the 2011 Cases with lead case 11-cv-23107.  [ECF No. 11].

In Case No. 10-cv-21332, I rejected the Tribe's argument that sovereign immunity barred the Internal Revenue Service's ("IRS") issuance of a summons to Morgan Stanley seeking production of records for the tax years 2006 through 2009 for accounts belonging to the Tribe's former chairman.  [Case No. 10-cv-21332, ECF No. 25].  In Case No. 10-cv-23507,[2] I extended this sovereign immunity analysis to IRS summonses issued on September 10, 2010 to Morgan Stanley, Citibank, American

---

[2] Case Nos. 10-cv-23507, 10-cv-23508, 10-cv-23509, and 10-cv-23511 were consolidated with Case No. 10-cv-23507 as the lead case.

Express, and Wachovia, which sought the Tribe's records for tax years 2006 through 2009.  [Case No. 10-cv-23507, ECF No. 52].  (The 2006 though 2009 summonses at issue in Case No. 10-cv-23507) are identical to the Summonses in the instant case, bar the tax year for which documents are requested.)  I also concluded the 2006 through 2009 summonses were issued for a legitimate purpose and sought documents relevant to that purpose; the IRS was not in possession of all the materials requested in the summonses; and the IRS followed the proper administrative steps.  I denied the Tribe's petitions to quash and enforced the summonses.

As stated above, in the instant proceeding, the United States filed on October 31, 2011 a Motion to Deny Petitions to Quash [ECF No. 10], and attached as an exhibit a Declaration of Revenue Agent James M. Furnas [ECF No. 10-1].  On the Tribe's Motion [ECF No. 19] and following a discovery conference, Magistrate Judge Jonathan Goodman permitted the Tribe to take an abbreviated, limited purpose deposition of Agent Furnas.  The Tribe took Agent Furnas' deposition on January 25, 2012.  [ECF Nos. 31 and 31-1].  On February 24, 2012, I held an evidentiary hearing with Agent Furnas as the parties' sole witness.  [ECF Nos. 33, 34].

In its pleadings, the Tribe argues, as it has before, the Summonses are barred by the doctrine of sovereign immunity.  The Tribe further contends the Summonses were filed for an improper purpose, seek documents that are not relevant to a proper purpose, and are overbroad, and the IRS failed to give notice to the individual tribal member taxpayers whose information is sought from third-party recordkeepers in the Summonses.

The Government argues the Tribe is collaterally estopped from relitigating positions advanced in Case Nos. 10-cv-23507 and 10-cv-21332.  Specifically, the Government notes the Summonses are identical (but for the time period of documents sought) to those considered in Case No. 10-cv-23507, and therefore the Tribe may not relitigate improper purpose, relevance, and overbreadth.[3]  The Government also contends the Summonses were issued for a legitimate purpose, the summoned data may be relevant to the IRS' investigation, the IRS does not possess the summoned information, and the IRS has substantially followed the administrative steps required by the Internal Revenue Code ("IRC").  As to notice, the Government argues the IRS need not provide notice to individual members of the Tribe because the Summonses name only the Tribe, and the Tribe was provided with notice.

As an initial matter, I decline to apply the doctrine of collateral estoppel to bar the instant litigation.  "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).  While there is persuasive precedent from other Circuits supporting the Government's position that collateral estoppel bars the instant suit, *see, e.g., Benistar Emp'r Serv. Trust Co.*, 184 F. App'x 93 (2d Cir. 2006), I have not located, and the Government has not cited, binding precedent from the Eleventh Circuit applying collateral estoppel to summons enforcement proceedings.  Moreover, although the Summonses are identical to the summonses

---

[3] The Government concedes collateral estoppel does not bar the Tribe's assertion of sovereign immunity because the application of sovereign immunity to the Tribe in IRS summons enforcement proceedings is on appeal and subject to de novo review.

4

issued for tax years 2006 through 2009, the Tribe has raised in the instant proceeding unique facts going to bad faith and improper purpose that should be considered.  *See I.A. Durbin, Inc.*, 793 F.2d at 1549 (collateral estoppel requires, *inter alia*, that "the issue at stake must be identical to the one involved in the prior litigation" and "the issue must have been actually litigated in the prior suit.").  Without binding precedent authorizing the application of collateral estoppel to summons enforcement proceedings, and noting there exists a unique factual basis for the Tribe's assertions in this case, I decline to apply collateral estoppel to the instant proceeding.  *See City of Riviera Beach v. That Certain Unnamed Gray*, 649 F.3d 1259, 1274 (11th Cir. 2011) ("The application of collateral estoppel is committed to the sound discretion of the district court.") (citation omitted); *Dailide v. United States Atty. Gen.*, 387 F.3d 1335, 1341 (11th Cir. 2004) ("We review the decision to apply collateral estoppel for abuse of discretion.").  This makes no difference to the result though: as explained herein, I conclude the Summonses are enforceable and deny the Tribe's Petition to Quash the Summonses.

## II.    Findings of Fact[4]

1.    James M. Furnas is a duly commissioned Revenue Agent employed by the IRS.  Declaration of Revenue Agent James M. Furnas [ECF No. 10-1] ("Furnas Decl.") ¶

---

[4] To the extent factual findings appear under the "Conclusions of Law" heading or vice versa, the pertinent facts or conclusions shall be construed appropriately and shall not be constrained by the heading order under which they appear.

I also note that the purpose of the instant proceeding is to assess the enforceability of the Summonses, not to determine the accuracy of any penalties that may have been assessed in prior years or the ultimate applicability of the Internal Revenue Code to the Tribe and its members.  To that end, evidence concerning the Tribe's reliance on advice of counsel and the Tribe's intentional disregard or willful noncompliance with the Internal Revenue Code in prior years is largely irrelevant to the instant proceeding and is not included in the Findings of Fact.

1.  As a Revenue Agent, Agent Furnas is authorized to issue administrative summonses for documents and testimony in furtherance of civil tax examinations.  *Id.*

2.     Agent Furnas specializes in tribal government taxation.  February 24, 2012 Evidentiary Hearing [ECF No. 24] ("Tr.") at 6:7–13.

3.     In 2005, the IRS learned through a confidential informant of allegations that the Tribe regularly distributed payments to tribal members without reporting these distributions to the IRS.  Furnas Decl. ¶ 4; Deposition of James Furnas [ECF No. 31-1] ("Furnas Dep.") at 19:19–21, 23:2–7; Tr. at 7:20–25.

4.     As a result of these allegations, the IRS commenced an audit of the Tribe's gaming facility.  Tr. 7:20–8:4.

5.     Because of the information developed in the audit of the gaming facility, the IRS expanded the audit to include the tribal government and examined whether the Tribe was meeting its reporting and withholding obligations for tax years 2000 through 2005.  *See* Furnas Decl. ¶ 5; Tr. at 9:9–11; *see also* Furnas Dep. at 19:17–20:4.

6.     The 2000 through 2005 examination included (1) a review of cancelled checks, obtained as a result of third-party summonses to financial institutions, for payments made to tribal members and service providers, (2) a review of an extract of the Tribe's general ledger and partial check registers from the non-taxable distribution ("NTDR") account, provided voluntarily by the Tribe; and (3) a verification of the general ledger extract against bank records obtained through third-party record keeper summons.  Furnas Dep. at 5:3–6:3; Tr. at 9:15–17, 10:8–10, 11:22–25, 59:5–60:18.

7.     Through this examination, the IRS determined, for tax years 2000 through 2005, the Tribe failed to make required withholding on certain taxable payments of

6

American Indian casino profits under 26 U.S.C. § 3402(r) and backup withholding under 26 U.S.C. § 3406, and also failed to file Forms 945 (Annual Return of Withheld Federal Income Tax) for that withholding.  Furnas Decl. ¶ 5.  In addition, the IRS determined several Forms 1099 MISC (Miscellaneous Income), required to report payments to members as well as payments of non-employee compensation to service providers, were not filed.  *Id.*; *see also* Tr. at 17:6–12.

8.      Agent Furnas discussed with the Tribe's counsel, Dexter Lehtinen and Guy Lewis, a potential global settlement for tax years 2000 through 2005 between the IRS and the Tribe wherein the Tribe would pay tax on behalf of tribal members and the IRS would then agree not to expand the examination to those members.  Furnas Dep. at 25:22–5.  The discussions were only in general terms, as Agent Furnas did not have any evidence from which to calculate the specific tax liability, and the parties did not ever reach such a settlement.  *Id.* at 26:2–5, 27:6–14, 28:17–23.

9.      Believing that the Tribe continued to make payments similar to those found in tax years 2000 through 2005 without properly withholding from or reporting them, the IRS began investigating the Tribe for tax years 2006 through 2009, and, on September 10, 2010, caused summonses to be issued to Morgan Stanley, Wachovia, Citibank, and American Express.  Furnas Decl. ¶¶ 7–8.

10.     The Tribe did not cooperate with the IRS with regards to the 2006 through 2009 investigation.  Tr. 63:20–64:5.  The Tribe did not provide any documents, allow Agent Furnas to interview any officials or employees or knowledgeable individuals, or provide general ledger extracts for tax years 2006 through 2009.  *Id.* at 63:20–64:5, 64:18, 20.

11.     The Tribe filed petitions to quash the 2006 through 2009 summonses.  *See generally* Case Nos. 10-cv-23507, 10-cv-23508, 10-cv-23509, and 10-cv-23511.[5]   I concluded tribal sovereign immunity did not bar enforcement of the summonses, determined the summonses were issued for a proper purpose and were not overbroad, and denied the Tribe's petitions to quash.  Case No. 10-cv-23507, ECF No. 52.

12.     Agent Furnas is in the process of obtaining and compiling documents responsive to the 2006 through 2009 summonses.  Tr. at 36:20–24.  He has started reviewing those records, but has not reached any conclusions with regards to those records.  *Id.* at 37:3–14.

13.     On May 12, 2011 (before Agent Furnas received documents responsive to the 2006 through 2009 summonses), as a result of what it found for tax years 2000 through 2005, the IRS expanded its investigation to include the 2010 tax year.  Furnas Decl. ¶ 9; Tr. at 7:14–19; 17:3–15; 37:11–14; Furnas Dep. at 31:23–32:10.  The Tribe's willful noncompliance with tax laws was not a basis for the IRS' expansion of the investigation to tax year 2010.  Tr. at 15:16–21, 16:7–23.  Nor was a desire to see how the Tribe spends its money a basis for expansion.  *Id.* at 30:9–14.  Further, the results of the 2006 through 2009 investigation will not affect the IRS' need to investigate tax year 2010.  *Id.* at 64:24–65:2.

14.     From the period 2000 through the present, the Tribe has never filed a Form 945, Annual Return of Withheld Federal Tax.  Furnas Decl. ¶ 6.

---

[5] "A court may take judicial notice of its own records …."  *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987).

15.     On August 9, 2011, Agent Furnas caused to be issued to Morgan Stanley, Wachovia, Citibank, and American Express summonses for documents encompassing the tax year 2010 (previously defined as "Summonses"). Id. ¶¶ 11, 13, 21, 23, 31, 33, 41, 43.

16.     The Summons for each financial institution is identical to that issued for tax years 2006 through 2009 (bar the tax year for which documents are sought). *See generally* Case Nos. 10-cv-23507, 10-cv-23508, 10-cv-23509, and 10-cv-23511.

17.     The August 9, 2011 Morgan Stanley summons seeks the following categories of documents:

(i)     Records of security transactions including all types of accounts, agreements, contracts, application for account, and signature cards. Records relating to treasury notes or certificates of deposit purchased, cash accounts, ready asset accounts, mutual fund accounts, commodity accounts, margin accounts, or other accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions.

(ii)    Records showing the dates, amounts, and purpose of all payments, including records showing a description of the securities transacted, quantity bought or sold, date of transactions, purchase or sales price, and commissions paid.

(iii)   Records of the disposition of the proceeds from each sale of a security, including checks (front and back) issued to the above named individual(s) as a result of these sales.

(iv)    Records of any and all dividends and/or interest paid to the Miccosukee Tribe, including checks (front and back) and Forms 1099 issued to the Miccosukee Tribe.

(v)     Records of any other payments to the Miccosukee Tribe that show the date, amount, and purpose of the payment, including the checks (front and back) for such payments.

    (vi)    Records maintained of transactions for or communications with the Miccosukee Tribe, including all notes, memoranda (informal or formal), correspondence, financial statements, background or credit investigations, and records identifying the stock transfer agent and dividend disbursing agent.

    (vii)    Records of all checking accounts of the Miccosukee Tribe, including but not limited to signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records pertaining to all debit and credit memos, transit items and Forms 1099 issued.

    (viii)    Records of all credit and/or debit cards of the Miccosukee Tribe, including but not limited to application forms completed, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, cash advances, transaction records, individual charge invoices, repayment records disclosing the dates, amounts and method (cash or check) of repayment and checks tendered to make repayments (front and back).

*See id.* ¶¶ 14,

18.    The August 9, 2011 Citibank, American Express, and Wachovia summonses

directs the respective institution to:

    (i)    Provide all savings account documents, including but not limited to signature cards, ledger cards, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, transit items, checks issued for withdrawals and Forms 1099 issued.

    (ii)    Provide all checking account documents, including but not limited to signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records pertaining to all debit and credit memos, transit items and Forms 1099 issued.

    (iii)    Provide all loan documents, including but not limited to applications, financial statements, loan collateral agreements, credit and/or background investigations, loan agreements, notes, mortgages, settlement sheets, contracts, checks issued for loans, repayment records (including records revealing the date, amount and method of repayment, whether by cash or check), checks used to repay loans, documents reflecting the total amount of discount or interest paid annually, records of liens, loan correspondence files and internal bank memoranda.

(iv)    Provide all safe deposit box documents, including but not limited to contracts, access records, and records of rental fees paid (including those reflecting the date, amount, and method of payment, whether by cash or check).

(v)    Provide all Certificate of Deposit documents, including but not limited to applications, actual Certificate of Deposit instruments(s), records of purchases, redemption's, checks issued on redemption, checks used to purchase Certificate, all correspondence regarding the Certificate(s), Forms 1099 issued, documents reflecting the annual interest paid and/or accumulated, the dates of payment and/or dates interest is earned, copies of checks issued for interest payments or deposits into account reflecting interest paid.

(vi)    Provide all Money Market Certificate documents, including but not limited to applications, actual Money Market Certificate instruments(s), records of purchases, redemption's, checks issued on redemption, checks used to purchase Certificate, all correspondence regarding the Certificate(s), Forms 1099 issued, documents reflecting the annual interest paid and/or accumulated, the dates of payment and/or dates interest is earned, copies of checks issued for interest payments or deposits into account reflecting interest paid.

(vii)    Provide all U.S. Treasury Notes and Bills, including but not limited to all documents reflecting the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments and all records of interest paid or accumulated (including those revealing the dates and amount of interest paid or accumulated).

(viii)    Provide all credit card records, including but not limited to application forms completed, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, cash advances, transaction records, individual charge invoices, repayment records disclosing the dates, amounts and method (cash or check) of repayment and checks tendered to make repayments (front and back).

(ix)    Provide all documents reflecting the purchase of bank checks, cashier, teller, travelers' checks, certified checks and money order records. This request also includes the check register, file copies of the checks or money orders and records revealing the date and source of payment for said checks or money orders.

(x)    Provide all documents reflecting certified checks, wire transfers, collections, letters of credit, bonds and securities purchased, sold or otherwise transacted through each bank. This request also includes

savings bond transactions and investment accounts and should include documents that disclose the date and amount of the transaction, method of transaction (i.e., whether by cash, check or electronic), source of payment, instruments used for payment and statements of transactions.

(xi)    Provide all documents reflecting correspondence or other communications regarding the Miccosukee Tribe.

*Id.* ¶¶ 24, 34, 44.

19.    The Summonses request documents encompassing calendar year 2010. *See, e.g.*, Morgan Stanley Summons, ECF No. 1-3, p. 1, ¶ 4.

20.    The Summonses seek documents pertaining to the Miccosukee Tribe, and do not seek documents pertaining to individual tribal members.  *See, e.g.*, *Id.*, p. 1, ¶ 5.

21.    The IRS served, via certified mail, properly attested copies of each summons on the relevant financial institution, and gave notice of the service to the Tribe, also via certified mail.  Furnas Decl. ¶¶ 11–12, 21–22, 31–32, 41–42.

22.    The IRS took all administrative steps required by the Internal Revenue Code, and there is no referral to the Justice Department as defined in Section 7602(d) of the Internal Revenue Code with respect to the Tribe for the 2010 tax period.  *Id.* ¶¶ 10, 20, 30, 40, 50.

23.    Aside from a sequestered set of documents from American Express, which the IRS is not reviewing until the instant case is resolved, none of the financial institutions have complied with the Summonses and the IRS is not otherwise in possession of the summoned information.  *Id.*¶¶ 18, 28, 38, 48.

24.    The purpose of the Summonses is to obtain evidence with regard to whether the Tribe met its withholding and reporting requirements for the tax year 2010, including determining what payments the Tribe made (including, but not limited to, payments from

the NTDR account), and to whom, and whether those payments required Form 1099 reporting and withholding under*, inter alia*, 26 U.S.C. §§ 3402(r), 6041(a), and 6011(a). Furnas Dep. 15:10–16:1; Tr. 16:24–17:15, 32:11–33:2.

25.     Based on a review of records for prior tax years, Agent Furnas knows, for those years, the accounts from which the Tribe made payments that required reporting or withholding.  Tr. at 33:9–16.  Agent Furnas did not, however, limit the Summonses to these accounts because, although the accounts may be the initial focus of Agent Furnas' investigation for tax year 2010, it is possible the Tribe changed the way it conducted its financial transactions, or information from these accounts leads to other accounts where there were substantial payments that required reporting or withholding. Tr. 33:9–34:17.

26.     Further, Agent Furnas elected not to issue narrower Summonses and then expand them, if need be, in part because of statute of limitations concerns, including the three-year limitations period on incorrect information returns filed by the Tribe and expansion of the investigation to related taxpayers, discovered through the 2010 examination, who have filed incorrect returns.  Tr. at 35:20–36:19; *see also id.* at 43:20–45:19.

27.     The degree of the Tribe's cooperation affects Agent Furnas' ability to narrow a summons or information request, but the Tribe has not cooperated with the IRS with regards to the 2010 investigation.   Tr. at 64:7–64:9, 65:5–7.   The Tribe has not responded to Agent Furnas' document requests, allowed Agent Furnas to interview any employees or knowledgeable individuals, or provided Agent Furnas a general ledger extract for tax year 2010.  *Id.* at 4:9–12; 64:21–23.

28.     Because Agent Furnas has seen no evidence for tax year 2010, he has made no determinations regarding tax liabilities or penalties, or willfulness or intentional disregard, for tax year 2010.  Furnas Dep. at 37:24–38:2; Tr. at 6:18–20, 15:19–16:5.

29.     Upon invitation of a group of individual tribal members, Agent Furnas and his supervisor met with the tribal members to discuss in general the individual tax implications of the IRS' investigation of the Tribe, and how they might settle their individual tax obligations with the IRS.  *Id.* at 55:22–56:4; 57:1–3.

30.     One possibility was a global settlement wherein the Tribe pays the tax on behalf of individual tribal members, and the IRS then agrees not to audit the individual tribal members.  *Id.* at 57:15–22; *see also id.* at 70:17–22.  However, to effectuate such a resolution, the IRS would still need the summoned information so it could calculate the substantially correct tax liability at issue.  *Id.* 58:8–16.

## III.    Conclusions of Law[6]

### A.     Sovereign Immunity

I address the Tribe's claim of sovereign immunity as a threshold issue because if tribal sovereign immunity applies, there is no need to evaluate the IRS' issuance of the Summons.  In essence, the Tribe seeks reconsideration of my prior orders addressing tribal sovereign immunity and urges me to determine that the Tribe is entitled to a claim of sovereign immunity in this case.  As it has previously argued, the Tribe contends that

---

[6] Although courts typically enumerate their findings of fact and conclusions of law, I have opted against following that tradition with respect to the conclusions of law.  A reading of the Federal Rules of Civil Procedure makes clear that formal findings of fact and conclusions of law need not be entered in numbered sequence. See FED. R. CIV. P. 52(a); *see also Travelers Indem. Co. v. SS Ever Glory*, Case No. 89-cv-5255, 1991 WL 107814, at *1 (S.D.N.Y. June 7, 1991) ("[Findings of Fact and Conclusions of Law"] may appear in narrative style and be just as effective.").

its sovereign immunity cannot be abrogated absent an express intent of Congress, and such intent is not present in the Internal Revenue Code, or Sections 7602, 7610, and 7210 thereof, because Indian tribes are not specifically mentioned and the "person" referred to in those sections does not include Indian tribes or the sovereign.  The Tribe further argues the IRC does not generally apply to the Tribe, and the Tribe (as opposed to a tribal member) enjoys absolute sovereign immunity.

I have considered the Tribe's arguments, and I have addressed all of the arguments in my prior orders regarding sovereign immunity (Case No. 10-21332, ECF No. 25 and Case No. 10-23507, ECF Nos. 52, 55).  I therefore expressly adopt and incorporate herein the aforementioned orders and, as stated during the February 24, 2012 evidentiary hearing, hold the parties' legal positions subject to the Eleventh Circuit Court of Appeals' review of these orders.

I note that the recent Eleventh Circuit decision in *Furry v. Miccosukee Tribe of Indians of Florida*, --- F.3d ----, 2012 WL 2478232 (11th Cir. June 29, 2012) does not change my conclusion that tribal sovereign immunity does not bar IRS summons enforcement proceedings.  *Furry* involved the application of sovereign immunity to a private action under 18 U.S.C. § 1161 and Florida's dram shop law.  *Id.* at *1.  The Eleventh Circuit affirmed the district court's dismissal of Furry's claims on sovereign immunity grounds, concluding Congress did not abrogate tribal sovereign immunity or authorize private suit relating to tribal liquor transactions, and the Tribe did not waive sovereign immunity by applying for a state liquor license and electing to serve alcohol with the benefit of that license.

The Eleventh Circuit in *Furry* did not, however, address the application of sovereign immunity to a suit by a superior sovereign, *Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1135 (11th Cir. 1999) ("Tribal sovereign immunity does not bar suits by the United States.") (citation omitted). Further, the *Furry* decision does not affect my conclusion that summons enforcement proceedings are not "suits" against the sovereign.  *Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.") (citations and internal quotation marks omitted).  Having concluded that tribal sovereign immunity cannot be used to quash the Summons, I turn to the *Powell* factors.

**B.    *Powell* Analysis**

In the seminal case of *United States v. Powell*, 379 U.S. 48, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964), the United States Supreme Court articulated the controlling framework for determining the enforceability of an IRS summons.  The IRS must

> "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed-in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect."

*Id.* at 57–58; *see also United States v. Morse*, 532 F.3d 1130, 1132 (11th Cir. 2008) (applying *Powell* framework to enforcement of an IRS summons); *Sugarloaf Funding, LLC v. United States Dept. of the Treasury*, 584 F.3d 240, 345 (1st Cir. 2009) (applying *Powell* framework to motion to quash: "Regardless of who initiates the action, the court

16

follows a familiar structured analysis in a summons enforcement proceeding."). The IRS' burden in meeting the *Powell* factors is "minimal," and "the IRS can satisfy [its] burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir.1985) (characterizing IRS' power to investigate as "broad" and "expansive") (citations omitted).

Once the IRS makes its showing, "the burden shifts to the taxpayer to disprove one of the elements of the government's case or to show that enforcement of the summons would be an abuse of the court's process." *Matter of Newton*, 718 F.2d 1015, 1018–19 (11th Cir. 1983). "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58; *see also United States v. Texas Heart Inst.*, 755 F.2d 469, 482 (5th Cir. 1985) (bad faith found where IRS planned to unlawfully disclose the summoned documents); *United States v. Deak-Perera & Co.*, 566 F. Supp. 1398, 1402 (D.D.C. 1983) (bad faith found when IRS committed fraud in gathering information used to use summons). The taxpayer's burden in disproving one of the elements of the government's case or showing an abuse of the court's process is "a heavy one, requiring allegation of specific facts and introduction of evidence." *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992) (citations omitted).

In the instant case, the Government attached to its Motion to Deny Petitions to Quash the declaration of Agent Furnas, who attested to the IRS' compliance with all four levels of the *Powell* test. Specifically, Agent Furnas's declaration states (1) the Summons was issued "for the proper purpose of continuing the IRS's investigation of

17

the Tribe" "to learn about the Tribe's potential tax liabilities for the tax period ending December 31, 2010," in light of the IRS' belief that the Tribe, in year 2010, failed to report to the IRS distributions to Tribe members and withhold and turnover portions of these distributions (¶¶ 4–5, 7, 11, 16); (2) the summoned information is necessary to determine whether the Tribe made unreported payments, and the amount, nature, source, and recipients of such payments, and "is relevant to the IRS's suspicion that the Tribe is not meeting its withholding and reporting responsibilities" (¶ 17); (3) "the IRS is not otherwise in possession of the summoned information" (¶ 18); and (4) Agent Furnas "followed all administrative steps required by the Internal Revenue Code for issuance of the [Summons]" (¶ 20).  The burden thus shifts to the Tribe to disprove one of the four elements of the Government's prima facie showing, or to demonstrate that enforcement of the summons would constitute an abuse of the court's process.

### 1.    Legitimate Purpose

An administrative summons must be issued "in good-faith pursuit of the congressionally authorized purposes of § 7602."  *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318, 98 S. Ct. 2357, 57 L. Ed. 2d 221 (1978); *see also United States v. Rockwell Int'l*, 897 F.2d 1255, 1262 (3d Cir. 1990) ("[T]he requirement of legitimate purpose means nothing more than that the government's summons must be issued in good faith pursuant to one of the powers granted under 26 U.S.C. § 7602.").  Section 7602 authorizes the IRS to issue a summons to require a person[7] to produce books,

---

[7] As provided in 26 U.S.C. § 7602(b), the IRS may "summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper …."

papers, records, or other data, or to give testimony relevant to (1) ascertaining the correctness of any return, (2) making a return where none has been made, (3) determining or collecting the liability of any person for any internal revenue tax, or (4) inquiring into any offense connected with the administration or enforcement of the internal revenue laws.   26 U.S.C. §§ 7602(a)–(b); 26 C.F.R. § 301.7602-1(a).   In addition, Section 7601 provides the IRS a general mandate (and, by extension, a general duty) to "inquire after and concerning all persons … who may be liable to pay any internal revenue tax …."  26 U.S.C. § 7601; *see also Nero Trading, LLC v. United States Dept. of Treasury, I.R.S.*, 570 F.3d 1244, 1248 (11th Cir. 2009) (recognizing "Service's obligation to administer and enforce Congress' power to lay and collect taxes.").   Further, the Supreme Court "has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies."  *United States v. Euge*, 444 U.S. 707, 711, 101 S. Ct. 874, 63 L. Ed. 2d 141 (1980).

The IRS need not prove that the Tribe actually failed to properly withhold taxes and report payments to obtain enforcement of a summons.  *Cf. Powell*, 379 U.S. at 57 (holding IRS "need not meet any standard of probable cause" to obtain enforcement of [a] summons ….").  *See also United States v. White*, 853 F.2d 107, 111 (2d. Cir. 1988) ("[T]he primary issue presented by a summons enforcement proceedings is *not* whether the IRS has established or is even likely to establish guilt or liability on the taxpayer's part; rather, the issue is whether the IRS had a valid tax determination or collection

purpose in issuing its summons.") (emphasis in original).   Indeed, the IRS may investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."  *Powell*, 379 U.S. at 57 (quotation omitted).

In the instant matter, the IRS has asserted a legitimate investigative purpose—to determine whether the Tribe met its withholding and reporting requirements for the tax year 2010.[8]   Based on the results of the 2000 through 2005 investigation, as well as the Tribe's failure to file a Form 945 or remit withholdings for tax year 2010, the IRS has strong reason to suspect that, for tax year 2010, the Tribe has failed to withhold taxes as required by 26 U.S.C. §§ 3402 and 3406; file a Form 945, Annual Return of Withheld Federal Income Tax, as required by 26 U.S.C. § 6011(a); and file information returns, including Form 1099-MISC, for payment made in the course of its trades and businesses in excess of $600.[9]   *See, e.g.*, 26 U.S.C. § 3402(r)(1) (entitled "Extension of withholding to certain taxable payments of Indian casino profits," and requiring "[e]very person, including an Indian tribe" to deduct and withhold taxes from payments of certain gaming revenues to individual Tribe members); 26 U.S.C. § 6041(a) (requiring "[a]ll persons engaged in a trade or business and making payment in the course of such trade or business to another person … of $600 or more in any taxable year" to "render a true and accurate return to the Secretary … setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment."); Rev.

---

[8] The IRS does not contend that the Tribe itself is subject to federal income taxes.

[9] In Case No. 10-cv-23507, I determined that investigation of these withholding and reporting requirements was a proper purpose of the IRS' investigation of the Tribe.  [Case No. 10-cv-23507, ECF No. 52].

Rul. 85-194, 1985-50 I.R.B. 14, 1985-2 C.B. 301, 1985 WL 287244 (IRS RRU) (Dec. 16, 1985) (in IRS revenue ruling, concluding 26 U.S.C. § 6041(a) information reporting requirements apply to tribal governments that operate bingo establishments); *see also Chickasaw Nation v. United States*, 208 F.3d 871, 884 (10th Cir. 2000) (noting that American Indian Tribes remain subject to tax laws imposed by Congress despite their unique status); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 935 (7th Cir. 1989) (citing F. Cohen, Handbook of Federal Indian Law 399 (1982 ed.)) ("[T]here can be little doubt that tribes are subject to [the withholding statute's] requirements as employers, and Indians are covered as employers or employees. … Tribes and Indians have in fact complied with this law, and there seems no controversy over it."); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 845 F.2d 139, 143 (7th Cir. 1988) ("The IRS has consistently ruled that Congress did not intend to impose the federal income tax on tribes.  But tribes as employers basically have been subject to federal insurance contributions tax, 26 U.S.C. §§ 3101-26, unemployment compensation tax, *id*. at §§ 3301-11, and income tax withholding, *id*. at §§ 3401-06.") (citing F. Cohen's Handbook of Federal Indian Law 231 (3d ed. 1982)).

To the Tribe's suggestion that the IRS should wait until it completes its examination of tax years 2006 through 2009 to commence examination of tax year 2010, under the relevant case law, the IRS is under no obligation to do so.  To the contrary, "[t]he IRS is duty bound to inquire after persons who may be liable for the

payment of taxes." *United States v. Harris*, 628 F.2d 875 (5th Cir. 1980).[10]   Because the results of the 2000 through 2005 investigation justify the 2010 investigation, the IRS does not need the results of the 2006 through 2009 investigation to establish a legitimate purpose to issue the 2010 Summonses.   Moreover, waiting to issue the Summonses would risk expiration of the statute of limitations period on incorrect information returns filed by the Tribe or its individual members.  *See generally* 26 U.S.C. 6501 (Limitations on assessment and collection).   I conclude, therefore, the Government has demonstrated, and the Tribe has not disproved, a legitimate purpose for the Summonses.

### 2.    Relevance

Relevance under Section 7602 "is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court."   *United States v. Arthur Young & Co.*, 465 U.S. 805, 814, 104 S. Ct 1495, 79 L. Ed. 2d 826 (1984).   The Supreme Court has noted that Section 7602's authorization to summon materials that "may be" relevant

> "reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility.  The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS; the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense."

---

[10] All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Id.* (internal citation omitted) (emphasis in original).   To that end, *Powell's* relevance standard is "a low one," and the Government need only show that inspection of the desired records "might throw light" upon the correctness of the taxpayer's return and liabilities.  *United States v. Kis*, 658 F.2d 526, 537 (7th Cir. 1981).

Here, I conclude the Summonses satisfy the *Powell* relevance prong.  Although the Summonses seek a broad range of documents, the documents—including those in the safe deposit boxes and pertaining to credit card records or background investigations—are relevant to the IRS' investigation of the Tribe's withholding and reporting.  *See United States v. Judicial Watch, Inc.*, 371 F.3d 824, 832 (D.C. Cir. 2004) ("That the records sought are extensive is not material so long as the records are relevant to the matters at issue in the audit.").  To examine whether the Tribe properly filed Form 945s and form 1099s, the IRS must determine what payments the Tribe made, the amount of the payments, the payees, when the payments were made, and the purpose of the payment.  To determine the applicability of certain withholding requirements imposed on distributions from the Tribe's casino profits, the IRS must examine the source of funds for payments the Tribe made.  So too must the IRS examine the summoned information before it can determine whether the payments to tribal members fall under the general welfare exclusion.   Finally, although the Summonses exclude Miccosukee Indian Gaming, the requested information may still contain information about the distribution of gaming revenue to tribal members.  Accordingly, in light of all of the evidence, I conclude the documents requested by the Summonses are potentially relevant to the IRS' determination of whether the Tribe made necessary and proper withholding and reporting requirements for tax year 2010.

### 3.    Possession of Information

*Powell's* third prong requires that the information sought by the Summonses is not already in the within the Commissioner's possession.  *Powell*, 379 U.S. at 57–58. Agent Furnas' Declaration states that, aside from a sequestered set of documents from American Express, which the IRS is not reviewing until the instant case is resolved, none of the banks have complied with the Summonses and the IRS is not otherwise in possession of the summoned information.   The Tribe elicited no testimony to the contrary during Agent Furnas' January 25, 2012 deposition or the February 24, 2012 evidentiary hearing.   Notwithstanding, the Tribe argues that some of the documents being summoned, namely the Form 1099s, *should be* or *would be* in the Government's possession.  *See, e.g.*, ECF No. 13, p. 15; ECF No. 35, p. 17, ECF No. 42, p. 5.  Even if the Government possesses the summoned Form 1099s, actual possession of this small portion of summoned information does not bar enforcement of the Summonses.  *See United States v. Davis*, 636 F.2d 1028, 1037 (5th Cir. 1981)[11] (holding "actual possession of or access to information by the IRS is not an absolute bar to enforcement of a summons for that information").   The former Fifth Circuit in *Davis* affirmed the trial court's enforcement of a summons over the taxpayer's objection that some of the summoned documents were already in the IRS' possession, holding enforcement of a summons is permissible under *Powell* and the Internal Revenue Code "[w]hen a summons as a whole is not harassing, when the bulk of the materials summoned is not demonstrably in the possession of the IRS, and where the marginal burden of supplying

---

[11] All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

information which might already be in the possession of the IRS is small." *Id.* at 1038. The court further noted that, although the district court could have carved out of the summons information already in the IRS' possession, the district court could enforce the summons in its entirety. *Id.* at 1037.  Accordingly, I conclude, based on the evidence of record, the Tribe has not established the IRS is in possession of the summoned documents, and, even if the IRS possesses a small portion of the documents, this possession does not bar enforcement of the Summonses.[12]

### 4.    Administrative Steps

Although the Tribe initially argued the IRS did not take all administrative steps required by the Internal Revenue Code because the IRS did not provide notice to the individual members whose records could be disclosed in compliance with the Summonses, *see* ECF No. 1 at p. 20, the Tribe appears to have abandoned this argument.  *See generally* ECF Nos. 13, 35.  As the Government notes, the Summonses identify and seek documents pertaining to the Miccosukee Tribe only.  Therefore, the IRS was not required to provide notice to any individual tribal member.  *See* 26 C.F.R. § 301.7609-2 (requiring IRS to give notice of a third-party summons "to any person, other than the person summoned, who is identified in the summons").  Because the IRS served a copy of the Summonses on the respective third party financial institution in accordance with 26 U.S.C. § 7603, and gave the Tribe notice of the Summonses in

---

[12]   The Tribe appears to argue Agent Furnas does not know whether he possesses the summoned documents because he has not yet reviewed all of the documents received in response to the summons issued for documents from tax years 2006 through 2009.  The Tribe has provides no reason that documents responsive to the instant Summonses, which seek documents for tax year 2010 only, would be included in that prior production.  Even if there is overlap of *some* documents, as explained *supra*, actual possession of a small portion of the requested documents does not bar enforcement of the Summonses.

accordance with 26 U.S.C. § 7609, the IRS complied with the administrative steps imposed by the Internal Revenue Code.

### 5.   Improper Purpose / Abuse of Court Process

Finally, I conclude the Tribe has failed to show that the Summonses were issued for an improper purpose and/or are an abuse of the court's process, as the Summonses are not overbroad, were not issued to coerce settlement of collateral matters, and were not issued in bad faith.  The Eleventh Circuit has instructed that "[a]n IRS summons is overbroad if it 'does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons.'"  *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (quoting *United States v. Wyatt*, 637 F.2d 293, 302 n. 16 (5th Cir. 1981)).  Here, the Summonses specify the detailed subject matter of the documents requested, the source of those documents, and the limited time period (calendar year 2010) from which the documents were to be drawn. *See Medlin*, 986 F.2d at 467 (affirming district court enforcement of a summons that sought "all records" relating to select corporations); *United States v. Reis*, 765 F.2d 1094, 1096, n. 2 (11th Cir. 1985) (affirming district court order enforcing summons requesting production of "'[a]ll documents and records you possess or control that reflect income you received for the year(s) 1980,' including, but not limited to, W-2 forms, Forms 1099, employee earnings statements, and records of bank deposits."); *see also United States v. Arthur Young & Co.*, 677 F.2d 211, 216–16, n. 4 (2d Cir. 1982), *rev'd on other grounds*, 465 U.S. 805, 104 S. Ct 1495, 79 L. Ed. 2d 826 (1984) (rejecting claim that summons covering 250,000 documents, including "all information pertinent to the audit" of the firm and all documents and information "relative to" the

preparation of the taxpayer's corporate income tax return was overbroad).  The Tribe

has failed to show, under binding precedent, that the Summonses are overbroad.

Nor has the Tribe demonstrated the Summonses were issued to pressure the

Tribe to settle a collateral matter.[13]  To the contrary, Agent Furnas' testimony, which I

find credible, reflects he spoke with individual tribal members about a possible

resolution of their tax liabilities only after they invited him to their homes to discuss such

matters.  He discussed with the members a potential global resolution wherein the Tribe

would pay the tax liabilities of individual tribal members and the IRS would agree not to

audit the individual tribal members.  Notably, even if the parties were to reach such a

settlement, the IRS would still need the summoned information so it could calculate the

substantially correct tax liability at issue.  With regards to earlier settlement discussions

with the Tribe's counsel, Dexter Lehtinen and Guy Lewis, the evidence reflects Agent

Furnas discussed with them a global resolution for tax years 2000 through 2005, but

does not reflect any efforts by Agent Furnas to pressure the Tribe or its members into

settlement.

Finally, Agent Furnas' statement that he did not want to limit the Summonses to

only those accounts from which payments have historically been made does not reflect

bad faith.[14]  Agent Furnas explained that, although past activity is indicative of present

---

[13] Tellingly, the Tribe, in its Proposed Findings of Fact and Conclusions of Law [ECF No. 35] provides no citation to the record for the assertion that "[t]he Government's motives are geared toward pressuring the Miccosukee Tribe to pay the tax on behalf of members to avoid further investigations."  [ECF No. 35, pp. 16–17, ¶ 11].

[14] In response to the question of why he couldn't limit the 2010 Summonses to only those accounts from which payments were made in the past, Agent Furnas stated, "Because I don't want to limit myself to that," and then explained his rationale.  Tr. 34:19–36:6.

activity, it is not determinative, and limiting the scope of the Summonses could compromise the 2010 investigation.  In sum, the Tribe has presented no evidence in this proceeding to suggest the IRS plans to disclose the summoned information; engaged in fraud, trickery, or deceit; or has otherwise acted in bad faith.[15]  As such, the Tribe has failed to meet its heavy burden of proving an improper purpose or abuse of the court's process.

## IV.   Conclusion

For the reasons stated herein, I conclude the Government has met all four *Powell* factors in demonstrating its Summonses may be enforced.  The Tribe has failed to meet its heavy burden of refuting the Government's showing or otherwise demonstrating that enforcement would be an abuse of the Court's process.   Accordingly, it is hereby ORDERED and ADJUDGED as follows:

1.   Respondent United States of America's Motion to Deny Petitions to Quash [ECF No. 10] is **GRANTED**.

2.   The Petitions to Quash the Summonses issued to Morgan Stanley [ECF No. 1], Citibank [Case No. 11-cv-23111, ECF No. 1], American Express [Case No. 11-cv-23129, ECF No. 1], and Wachovia [Case No. 11-cv-23112 , ECF No. 1] are **DENIED**.

3.   Case No. 11-cv-23107 is **CLOSED**.

---

[15] To the extent the Tribe argues the IRS engaged in fraud, trickery, or deceit, or acted in bad faith, because Agent Furnas discussed in a class taught to the Enforcement Division of the National Gaming Commission a Miami Herald article concerning the Tribe's credit card expenses [ECF No. 42, p. 2], there is no evidence of record in this proceeding concerning the Miami Herald article or the class in this proceeding.  *See* ECF No. 42 (citing deposition transcript from prior proceeding).  In any event, discussion of the public record, without confirming or denying allegations in the public record, does not amount to bad faith.

4.      Case Nos. 11-cv-23111, 11-cv-23129, and 11-cv-23112 shall remain **CLOSED**.


DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of July, 2012.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT COURT JUDGE


cc:      Clerk of the United States Court of Appeals for the Eleventh Circuit
         (related to your Case No. 11-14825)
         Magistrate Judge Jonathan Goodman
         All Counsel of Record